UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    David A Doss,                                  Case No. 17-21492-beh

                   Debtor.                     Chapter 7

    David A Doss,

                   Plaintiff,

    v.                                          Adversary No. 18-2091

    Norhardt Crossing
    Condominium Association,

                   Defendant.

**MEMORANDUM DECISION ON DEFENDANT NORHARDT CROSSING CONDOMINIUM ASSOCIATION INC.'S MOTION FOR SUMMARY JUDGMENT**

       In Celtic lore, a selkie was a seal who could take human form on land, and become a seal again upon returning to the sea. Unfortunately for the debtor's argument, statutory liens do not have that same transformative quality and do not become avoidable judicial liens when the creditor returns with a money judgment.

       The debtor, David Doss, filed this adversary proceeding against Norhardt Crossing Condominium Association Inc., which has a statutory lien against the debtor's condominium unit, by virtue of Wis. Stat. § 703.165(3). The debtor asserts that Norhardt's lien is wholly unsecured, and therefore can be avoided under 11 U.S.C. sections 506(a) and 506(d). Norhardt responded to the complaint with a motion to dismiss, which the Court converted to a motion for summary judgment. For the reasons explained below, the Court will grant Norhardt's motion.

                                 **PROCEDURAL BACKGROUND**

       The debtor filed a Chapter 13 bankruptcy petition on February 27, 2017, and converted the case to a Chapter 7 in October 2017. Because he failed to file a certificate showing that he had completed a course in personal financial management, see § 727(a)(11), the debtor's case was closed without a discharge on March 7, 2018. The debtor subsequently moved to reopen his case to file

the certificate and obtain his discharge. Shortly before the Court granted his motion, on April 4, the debtor's counsel filed correspondence asking that the case be reopened, but not be closed immediately after discharge, explaining:

> I will be filing a Motion to Impose the Automatic Stay and Avoid a Lien against one of the creditors, Norhardt Crossing Condo Association with the court within 24 hours.
>
> When the Court issued notice of the closing of the case without discharge on March 9, 2018, creditor Norhardt Crossing Condo Association immediately filed Notice for a Sheriff sale on the debtor's home. The notice of sheriff sale is set for April 25, 2018 and debtor needs to protect his home from this creditor as their lien is totally unsecured.

Case No. 17-21492-beh, CM-ECF, Doc. No. 88.

The Court reopened the case on April 5, and later that same day the debtor filed a motion to reimpose the stay, citing as authority 11 U.S.C. section 362(c)(3)(B). The Court summarily denied the motion, noting that the cited section of the Code did not apply, and that the only way to "reimpose" the stay once it has lapsed as a matter of law is to seek injunctive relief, which requires an adversary proceeding. The Court's order also pointed out that the debtor appeared intent on initiating a proceeding to avoid Norhardt's lien based solely on its purportedly unsecured status, and that Supreme Court precedent precludes a Chapter 7 debtor from avoiding or "stripping off" a valueless lien. *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992); *Bank of America v. Caulkett*, 135 S.Ct. 1995, 1999 (2015). The Court therefore ordered the debtor to show cause why his case should remain open once his discharge issues, requiring him to "demonstrate that the relief he appears to be seeking—the avoidance of a lien on his residence based on its purportedly unsecured status—is not prohibited as a matter of law, in light of the Supreme Court's ruling in *Caulkett*, or otherwise." Case No. 17-21492-beh, CM-ECF, Doc. No. 92.

The debtor responded by initiating this adversary proceeding. His complaint seeks injunctive relief, as well as the avoidance of Norhardt's lien under 11 U.S.C. sections 506(a) and 506(d). It also asserts that Norhardt's claim/lien is dischargeable under section 523(a)(16). The debtor did not move for a preliminary injunction, but instead filed a "Notice of Request for Injunctive Relief," purporting to set a 10-day response deadline to the complaint. The Court issued a summons on April 16 and set a 30-day response deadline (May 16), as prescribed by Bankruptcy Rule 7012(a). On May 8, before the time to respond to the complaint had passed, the debtor filed a proposed order granting his requested injunctive relief "to prevent the confirmation of the sheriff sale now pending in Waukesha County Court." Norhardt objected to the proposed order, arguing that the debtor could not unilaterally shorten the time to respond to the complaint. The Court took no action on the proposed order,

indicating that it would address Norhardt's objection at the previously-scheduled pretrial conference on May 31, 2018. On May 16, Norhardt moved to dismiss the complaint and for sanctions under Bankruptcy Rule 9011. The Court considered both of these motions at the May 31 pretrial conference.

At the start of the pretrial conference, the debtor's counsel informed the Court of recent developments in Norhardt's state court foreclosure proceeding: on May 24, the parties appeared at a hearing on Norhardt's request for confirmation of the sheriff's sale of the debtor's condominium unit, as well as the debtor's request for a satisfaction of a judgment lien; the state court judge deferred ruling on the requests, explaining that whether Norhardt's lien was "discharged" was a question for the bankruptcy court to decide.

Also at the May 31 pretrial conference, counsel for the debtor conceded that injunctive relief was no longer necessary, and the Court sustained Norhardt's objection to the debtor's May 8 proposed order. Turning to the lien-avoidance request, the debtor's counsel attempted to distinguish *Dewsnup* and *Caulkett* by arguing that Norhardt's lien was a judicial lien, and not a mortgage. Counsel's argument on this point was not entirely cohesive: she later conceded that Norhardt had a statutory lien, but that the lien was dischargeable under section 523(a)(16); then asserted that the lien was judicial, and appeared to use the two terms interchangeably.[1]

---

[1] The audio recording of the pretrial conference, which is available on the docket, reflects the following exchange between the Court and the debtor's counsel:

> Q: Are you making a legal argument that a later judgment or judicial lien somehow . . . . replaced or nullified the statutory lien? . . . Your position seems to me, is that what's present here is a judicial lien, not a statutory lien, and that that is something that should be dischargeable. And I'm asking you, what happened to what seems to be a properly-recorded statutory lien? What happened to it? Is it still there, and there is something else? Or is it somehow transformed and what's your legal authority on that?
>
> A: Well your Honor, I believe it's still there, and I believe that it is a dischargeable lien because of 523(a)(16) . . . .
>
> Q: So your position is that the statutory lien is still in existence, but it's dischargeable under 523(a)(16). So if that's your argument about the statutory lien, what is it you're saying about a judicial lien?
>
> A: Well the argument about the judicial lien related to their argument that they have a mortgage or a secured lien of some sort on property . . . . . That is their contention, and ours is saying that yes they have a *judicial* lien, and that is distinguishable and dischargeable.
>
> Q: So are you saying there are two liens?
>
> A: No, there are not two liens, it's just what we're calling them, I think we're calling them different things.
>
> Q: But you accept that there is still a statutory lien?
>
> A: Only because they entered into an agreement with Mr. Doss's counsel at that time, I believe it was a stipulation on a foreclosure on the lien. . . . And that was back in [] 2015. That was the entry of that lien.

CM-ECF, Doc. No. 14 (audio recording beginning at approximately 35:30).

Because Norhardt's motion to dismiss attached and relied on exhibits not included in the complaint—a statement of condominium lien and a copy of its recorded lien on the debtor's unit—the Court converted the motion to one for summary judgment and allowed the parties to brief the issues and supplement the record with additional evidence relevant to the motion. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("The court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and continue under Rule 12."). The Court then took the matter under advisement.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(K). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56; *Tapley v. Chambers*, 840 F.3d 370, 376 (7th Cir. 2016). A factual dispute is "genuine" only if there is sufficient evidence for a reasonable jury to find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, (1986). For a fact to be material, it must be "outcome determinative under governing law." *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). To succeed in opposing a motion for summary judgment, the nonmoving party must present "definite, competent evidence to rebut the motion." *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir.1997) (internal quotation marks omitted). In determining whether there is a genuine issue of material fact, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436–37 (7th Cir. 2000).

Although the debtor's response brief asserts there are "issues of fact that preclude entry of summary judgment" for Norhardt, the purported factual disputes that the debtor appears to raise are not material to the determination of whether Norhardt has a non-avoidable lien on the debtor's condominium unit.[2] As a result, there are no disputes as to any material factual issues that would preclude entry of summary judgment for the defendant.

---

[2] The debtor offers conceded speculation that Norhardt is pursuing the lien due to some racial bias (Doss Affidavit, CM-ECF, Doc. No. 15-1, ¶ 4), and further challenges the underlying foreclosure and Norhardt's motives with arguments that could or should have been raised in the state court, such as his alleged failure to receive 10-day notice, and Norhardt's interference with a mortgage loan modification (*Id.*, ¶¶ 6-7).

## UNDISPUTED FACTS

Based on the parties' briefing and the record in this case, the Court finds that the following facts are undisputed or not reasonably subject to dispute:

- The debtor owns a condominium unit at 1805 Norhardt Drive, in Brookfield, Wisconsin, which is part of Norhardt Crossing Condominium Association, Inc.

- Mr. Doss purchased his unit in November 2003.

- By mid-2015, Mr. Doss had become delinquent in his condominium dues and assessments.

- As a result, on September 18, 2015, Norhardt filed a lien against his unit with the Waukesha County Clerk of Courts, in the amount of $1,185.63, for condominium assessments for the period of May 1, 2015 to September 14, 2015. (*See* CM-ECF, Doc. No. 11, Ex. A.)

- Norhardt's lien is indexed in the lien docket of the Waukesha County Clerk of Courts, as 2015CO000065. (*See* CM-ECF, Doc. No. 11, Ex. B.)

- The lien docket is electronically available via a database known as CCAP (Consolidated Court Automation Programs), and indicates that the lien is not satisfied.[3]

- On October 30, 2015, Norhardt commenced a foreclosure suit to foreclose its lien, which is Waukesha County Case No. 2015CV2136.

- The foreclosure action resulted in a Stipulated Order for Foreclosure and Money Judgment and Foreclosure Judgment, entered on February 29, 2016. (*See* Case No. 17-21492-beh, Claim No. 3-1, at 6-11.) The foreclosure judgment listed a total amount due of $8,307.85, and provided a one-year redemption period. The separate money judgment was entered in the amount of $8,307.85.

- Almost a year later, on February 27, 2017, Mr. Doss filed his bankruptcy case, as a Chapter 13. In his (amended) Chapter 13 plan, he proposed to treat over $63,000 in arrears owed to his principal mortgage-holder, Wells Fargo, through a loan modification, or surrender the property. (Case No. 17-21492-beh. CM-ECF, Doc. No. 28.)

- Before his chapter 13 plan was confirmed, Mr. Doss converted his case to a Chapter 7 on October 20, 2017.

---

[3] The Court may take judicial notice of the state court docket under Federal Rule of Evidence 201. *See, e.g., Guaranty Bank v. Chubb Corp.,* 538 F.3d 587, 591 (7th Cir. 2008) ("a court is of course entitled to take judicial notice of judicial proceedings"); *United States v. Doyle,* 121 F.3d 1078, 1088 (7th Cir. 1997) (taking judicial notice of district court's docket sheet).

- His case closed without a discharge on March 7, 2018.

- Shortly after the case closed, Norhardt proceeded to enforce its foreclosure judgment and scheduled a sheriff sale of the condominium unit, to take place on April 25, 2018. The debtor received notice of the sale on March 14, 2018.

- The state court docket reflects that the sheriff sale was held as scheduled, and the state court judge signed an order confirming the sale on May 9, 2018.

- Also on May 9, the debtor received his Chapter 7 discharge.

- On May 11, the debtor filed an application with the state court requesting an order of satisfaction of a judgment lien, due to his bankruptcy discharge. The state court vacated the order confirming the sheriff sale on May 14, 2018.

- On May 24, the state court held a hearing on the debtor's application for satisfaction, as well as the confirmation of the sheriff sale, and deferred ruling on the matters until the resolution of this adversary proceeding.

## ANALYSIS

The parties' briefing raises two questions of law for the Court to decide. First, did Norhardt's foreclosure of its statutory lien change the nature of the lien to a judicial lien? Second, whatever the nature of the lien, can the debtor avoid it?

### A. The foreclosure of Norhardt's statutory lien did not change the nature of the lien to a judicial lien.

In Wisconsin, condominiums are governed by the Condominium Ownership Act, Chapter 703 of the Wisconsin Statutes. Section 703.165(3) provides for the creation of a lien on a condominium unit for unpaid assessments:

> All assessments, until paid, together with interest on them and actual costs of collection, constitute a lien on the units on which they are assessed, if a statement of lien is filed within 2 years after the date the assessment becomes due. The lien is effective against a unit at the time the assessment became due regardless of when within the 2-year period it is filed. A statement of condominium lien is filed in the land records of the clerk of circuit court of the county where the unit is located, stating the description of the unit, the name of the record owner, the amount due and the period for which the assessment was due. The clerk of circuit court shall index the statement of condominium lien under the name of the record owner in the judgment and lien docket. The statement of condominium lien shall be signed and verified by an officer or agent of the association as specified in the bylaws and then may be filed. On full

> payment of the assessment for which the lien is claimed, the unit owner shall be entitled to a satisfaction of the lien that may be filed with the clerk of circuit court.

Wis. Stat. § 703.165(3). Additionally, section 703.165(7) allows for the foreclosure of such a lien in the same manner as the foreclosure of a mortgage on real property:

> A lien may be enforced and foreclosed by an association or any other person specified in the bylaws, in the same manner, and subject to the same requirements, as a foreclosure of mortgages on real property in this state. An association may recover costs and actual attorney fees. An association may, unless prohibited by the declaration, bid on the unit at foreclosure sale and acquire, hold, lease, mortgage and convey the unit. *Suit to recover a money judgment for unpaid common expenses shall be maintainable without foreclosing or waiving the lien securing the same.* Suit for any deficiency following foreclosure may be maintained in the same proceeding. No action may be brought to foreclose the lien unless brought within 3 years following the recording of the statement of condominium lien. No action may be brought to foreclose the lien except after 10 days' prior written notice to the unit owner given by registered mail, return receipt requested, to the address of the unit owner shown on the books of the association.

Wis. Stat. § 703.165(7) (italics added). The italicized portion of this provision indicates that a condominium association has at least two remedies to recover delinquent assessments from a unit owner: a suit to recover a money judgment (an *in personam* action), and a foreclosure suit (an *in rem* action). Notably, obtaining a money judgment does not result in a waiver of the lien securing it.

    Consistent with the above provisions, in September 2015 Norhardt filed a statement of lien with the Waukesha County Clerk of Courts, giving rise to a statutory lien under Wis. Stat 703.165(3). Norhardt then took action to enforce its lien through foreclosure proceedings, under Wis. Stat 703.165(7). In doing so, Norhardt exercised both of its available remedies: it foreclosed its lien to obtain a foreclosure judgment, and it also obtained a money judgment against the debtor personally for the delinquent balance. The debtor asserts, without any supporting authority, that Norhardt's "condo lien filed in September 2015 [*would be*] a statutory lien that cannot be avoided in bankruptcy . . . if [Norhardt] had not pursued legal action to foreclose on the lien and obtained a money judgment, creating a judicial lien." CM-ECF, Doc. No. 15, at 3.

    There are several fundamental flaws with the debtor's lien transformation argument. First, the debtor appears to conflate Norhardt's money judgment with its foreclosure judgment. The money judgment Norhardt obtained against the debtor is *not* the result of the enforcement/foreclosure of Norhardt's statutory lien—it is the result of the enforcement of the debtor's personal obligations under his contractual agreement with the association. To highlight

the distinction, the money judgment is the result of Norhardt's *in personam* action (and would have allowed, for example, the garnishment of the debtor's wages),[4] while the foreclosure judgment is the result of its *in rem* action (and provided for the sale of specific real estate securing a pre-existing statutory lien). Any argument that the separate money judgment is an extension or reincarnation of Norhardt's statutory lien confuses the condominium association's rights against the debtor personally with its rights against his property.

Assuming, however, that the debtor means to argue that the foreclosure judgment—and not the corresponding money judgment—replaced or nullified Norhardt's statutory lien, that contention also must fail. Despite exhaustive efforts, the Court has been unable to find a single case or statute that would sustain this argument. Instead, every authority the Court has located holds to the contrary. *See, e.g. In re Cunningham*, 478 B.R. 346, 361 (Bankr. N.D. Ind. 2012) (judicial action to foreclose a statutory mechanic's lien in order to enforce it does not alter the characterization of the lien, and the entry of judgment on foreclosure of the mechanic's lien does not convert a statutory mechanic's lien into a judicial lien); *In re Green*, 494 B.R. 231, 236 n.24 (Bankr. E.D. La. 2013), *aff'd*, 516 B.R. 347 (E.D. La. 2014), *aff'd*, 793 F.3d 463 (5th Cir. 2015) ("The Court notes that 'judicial action taken to enforce a lien does not transform a statutory lien into a judicial lien.' . . . Also, '[t]he requirement of a judicial action to enforce the lien and establish its particular priority does not transform its essential character to a judicial lien.' . . . Therefore, the entry of the Default Judgment does not change the nature of the lien.").

Most notably, a bankruptcy court in this district rejected an almost identical argument regarding a Wisconsin statutory construction lien. In *Matter of Sato*, 9 B.R. 38, 39 (Bankr. E.D. Wis. 1980), the bankruptcy court dismissed the debtors' claim that a judgment resulting from the foreclosure of a statutory construction lien was a "judicial lien" subject to avoidance under section 522(f)(1). After concluding that the lien at issue arose as a matter of law rather than through any judicial action—much in the same way that the lien here arose, by operation of law after the filing of a statement with the clerk of the circuit court—the court went on to explain:

> As a final note, the court rejects the contention that [the lien-holder's] foreclosure action transformed its initial statutory lien into a judicial lien. A lien foreclosure judgment is unlike a personal judgment which upon proper docketing becomes a lien against the debtor's real estate in that county. Wis. Stat. s 806.15(1) (1977). Indeed its effect is to authorize the lienor to have the sheriff sell the

---

[4] While the recording of the separate money judgment may have created a judicial lien *independent of the pre-existing statutory lien*, the existence of the money judgment and any resulting lien has no effect on the validity of Norhardt's statutory lien or its related foreclosure judgment.

> debtor's interest in the affected property to satisfy the lien claim. And in certain cases, such as the one at bar, it also provides for a conditional personal judgment in the event the lienor's claim cannot be completely satisfied from the sale proceeds. Wis. Stat. s. 289.10 (1977).

*Matter of Sato*, 9 B.R. at 39. The same is true for Norhardt's statutory lien—it has not lost its character or force as a statutory lien because of the foreclosure judgment.

In its reply brief, Norhardt points out that Wisconsin courts have refused to adopt the debtor's theory when it comes to mortgage foreclosure judgments, citing *Bank of Sun Prairie v. Marshall Dev. Co.*, 2001 WI App 64, ¶ 18, 242 Wis. 2d 355, 626 N.W.2d 319 ("We find nothing in the holding or reasoning of this or other similar cases to suggest a valid mortgage no longer exists solely because the debt the mortgage secures has been reduced to a judgment."). It appears that Congress endorsed this "anti-merger" rule in enacting 11 U.S.C. § 522(f)(2)(C), which essentially clarifies that mortgage foreclosure judgments are not "judicial liens" that can be avoided under section 522(f). As the First Circuit B.A.P. explained:

> [In enacting § 522(f)(2)(C),] Congress was not creating an exclusion, it was providing clarification. Congress was making clear that the entry of a foreclosure judgment, which is essentially an order of sale, does not convert the underlying consensual mortgage into a judicial lien which may be avoided. . . . [S]ubsection § 522(f) describes liens that are subject to avoidance and [] subparagraph § 522(f)(2)(C) clarifies that judgments arising out of a mortgage foreclosure are not liens and, hence, are never avoidable under § 522(f).

*In re Hart*, 282 B.R. 70, 77 (B.A.P. 1st Cir. 2002), *aff'd*, 328 F.3d 45 (1st Cir. 2003); *see also In re Linane*, 291 B.R. 457, 461 (Bankr. N.D. Ill. 2003) (*Hart* explained that "[s]ection 522(f)(2)(C) was not included to create *any* exception to otherwise avoidable judicial liens, but was instead added to clarify that mortgage foreclosure *judgments,* which involve the sale and eventual transfer of a property's title to a third party, are not, and do not become, judicial liens subject to avoidance under Section 522.").

Norhardt then reminds that condominium liens are foreclosed in the same manner as mortgages in Wisconsin, and asserts that the anti-merger rule likewise applies to the foreclosure of condominium liens. In further support, Norhardt explains: "Without [the anti-merger] rule, creditors would lose their priority status once they decide to enforce their mortgages or liens. Such result would put the entire lien priority structure on its head."

The Court agrees. The foreclosure judgment here is essentially an order of sale; it is not a lien and cannot be avoided. If the Court were to accept the debtor's argument that the enforcement of a statutory lien through judicial action renders the lien "judicial," then, as one district court described, "statutory liens would only be a theoretical possibility. An individual lienholder is not able to recover simply by possessing the lien. Rather, the lienholder must go to court and obtain a judgment against the debtor in order to be able to execute on the lien. This would leave creditors the choice of being able to recover by seeking a judgment or maintaining a statutory lien and not being able to recover." *Young v. 1200 Buena Vista Condominiums*, 477 B.R. 594, 602 (W.D. Pa. 2012).

Finally, as Norhardt pointed out at both the May 31 pretrial conference and in its reply brief, the authority on which the debtor relies to make his "judicial lien" argument actually supports Norhardt's position. *See, e.g., Wozniak v. Wozniak*, 121 Wis. 2d 330, 334, 359 N.W.2d 147, 149 (1984) (distinguishing between statutory and judicial liens, and noting that (1) a judgment lien "ordinarily is not a lien on any specific real estate of the judgment debtor but is a general lien on all of the debtor's real property"; and (2) like mortgages, statutory liens are enforced via foreclosure); and *In re Beck*, No. 15-29541-svk, 2016 WL 489892, at *3 (Bankr. E.D. Wis. Feb. 5, 2016) (explaining that a Wisconsin construction lien is a statutory lien that arises by operation of law—much in the same way the condominium lien here arose).

In sum, the Court concludes that Norhardt's actions in enforcing its statutory lien and obtaining a foreclosure judgment did not alter the nature of its statutory lien and render it a judicial lien. The debtor's bankruptcy and subsequent discharge likewise had no effect on the rights created by the judgment of foreclosure that Norhardt obtained in enforcing its statutory lien.

### B. Regardless of the nature of the lien, section 506(d) does not provide a basis to avoid it.

In his complaint, the debtor relies on 11 U.S.C. sections 506(a) and 506(d) as the authority for avoiding Norhardt's lien. The debtor cited to these provisions of the Code despite the Court's warning in its order to show cause that the Supreme Court's decisions in *Dewsnup* and *Caulkett* appear to foreclose the use of that Code section to avoid "unsecured" liens in a Chapter 7 bankruptcy. The debtor attempts to distinguish *Dewsnup* and *Caulkett* by arguing—again without any supporting legal authority—that those cases do not apply because Norhardt has a judicial lien rather than a mortgage.

Setting aside that Norhardt has a valid *statutory* lien, the debtor's argument still fails. Nothing in the language of *Dewsnup* or *Caulkett* suggests that the reading of section 506(d), and the meaning of an "allowed secured claim," should be different when a lien is nonconsensual. Numerous courts have reached that same conclusion, holding that *Dewsnup* applies to both

consensual and non-consensual liens, including judicial liens. *See, e.g., In re Swiatek*, 231 B.R. 26, 29 (Bankr. D. Del. 1999) ("*Dewsnup* concerned a consensual lien and not a judgment lien, but the Supreme Court's examination of the history of liens under the Bankruptcy Code and its conclusion based on that examination is not so limited. The Court was very clear in stating that if the claim has been allowed, the lien is not avoidable."); *In re Concannon*, 338 B.R. 90, 95-96 (B.A.P. 9th Cir. 2006) ("Debtors [argue] that *Dewsnup* and its progeny apply only to *consensual* liens. Debtors reason that Imperial's wholly unsecured judgment lien may be stripped off simply because it is *nonconsensual.* This is a distinction without a difference.") (citing cases); and *Boring v. Promistar Bank*, 312 B.R. 789, 796-97 (W.D. Pa. 2004) ("The Court disagrees with the bankruptcy judge's analysis and conclusion that pursuant to the guidance provided by *Dewsnup* consensual and non-consensual liens should be treated differently under § 506(d). This Court adopts the opposite position . . . . This is consistent with the Supreme Court's finding in *Dewsnup* that Congress intended that liens pass unaffected through the bankruptcy proceedings; no differentiation between consensual and non-consensual liens was articulated by the Supreme Court in *Dewsnup*.").

And, although the Seventh Circuit has not weighed in on the issue, there is a strong argument that it would agree. In *In re Ryan*, 725 F.3d 623 (7th Cir. 2013), the Seventh Circuit was tasked with determining whether *Dewsnup* applied in the Chapter 13 context. The debtor argued that it did not, and that he could use section 506(d) to avoid a federal tax lien on the basis that the lien was "unsecured." The Seventh Circuit rejected this contention. In doing so, the court explained that policy considerations did not trump the clear statutory language of the Code:

> [The debtor's] argument is that the language in § 506(d) should be interpreted differently in Chapter 13 than in Chapter 7 cases because to hold otherwise would be contrary to the purposes of those statutory vehicles. This argument is not based on any language in § 506(d) that would signal differential treatment. In fact, the language of § 506(d) is straightforward, and does not indicate any intent for the terms to have meanings that differ based upon the circumstances.
>
> . . .
>
> The language [of section 506(d)] is uniform and does not lend itself to any differential treatment, and § 103(a) renders the provision applicable to Chapter 7 and Chapter 13 without distinction. . . . [B]ecause the statute applies to Chapter 7 and Chapter 13 without distinction, to give those words a different meaning for Chapter 13 than Chapter 7 would be to invent a statute rather than interpret it. . . . It is rare enough to interpret the same language differently in distinct statutory sections, but is an entirely different matter for

a court to give a term a different meaning in the same statutory provision.

725 F.3d at 625-27.[5]

Now, after filing his complaint and pressing his initial arguments at one hearing, the debtor apparently recognizes the lack of legal authority for his position, and urges the Court to avoid the lien under another section of the Code not cited in his complaint, section 522(f)(1), which allows the avoidance of judicial liens that impair a debtor's exemptions. *See* CM-ECF, Doc. No. 15, at 3. But Norhardt's lien is not a selkie. For the reasons explained above, Norhardt has an unavoidable *statutory* lien, and therefore section 522(f)(1) cannot invalidate that lien or the related foreclosure judgment.[6]

The debtor then cites to 11 U.S.C. § 523(a)(16) as further support that Norhardt's lien should be dischargeable. That provision of the Code, which was enacted in 1994 and later amended in 2005, provides that a discharge under section 727 does not discharge a debtor from any debt:

> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, . . . for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, . . . but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case[.]

11 U.S.C. § 523(a)(16).

The debtor's argument on this point is not entirely clear. He cites to *In re Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990) and *In re Stone*, 243 B.R. 40 (Bankr. W.D. Wis. 1999), and appears to suggest that, under the logic of these cases, any post-petition condominium fees he owes to Norhardt were included

---

[5] The Court has located only one case that has held to the contrary and finds it unpersuasive, particularly in light of the Seventh Circuit's extension of *Dewsnup* in *Ryan*. *See In re Mayer*, 541 B.R. 812, 814 (Bankr. E.D. La. 2015) (concluding that *Dewsnup* does not apply to nonconsensual judicial liens, and citing several cases for support, all of which either involved avoidance under section 522(f), or relied on pre-*Caulkett* logic to distinguish *Dewsnup* as applying only to partially-secured claims).

[6] The Court makes no ruling on the applicability of this Code section to the separate money judgment, because the issue is not fully developed or properly before the Court. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.") (internal quotations omitted). Nor would a favorable ruling on that issue provide the debtor the relief he seeks, which is the invalidation of Norhardt's statutory lien and foreclosure judgment.

in his discharge.  *See* CM-ECF, Doc. No. 15, at 4-6 (summarizing *Rosteck* and *Stone*, in which the courts concluded that post-petition condominium fees were included in the debtors' discharge, then stating: "In this case before the court, Debtor entered into a contract with Norhardt Crossing Condominium Association just as the other Debtors had in the above referenced cases.").  If this is, in fact, the debtor's argument, it is wrong.  Section 523(a)(16) was codified *in response to* cases like the Seventh Circuit's *Rosteck* decision, and the 2005 amendment to section 523(a)(16) limited the validity of *Stone.*  In other words, if *Rosteck* or *Stone* had been decided under the current version of section 523(a)(16), the results in those cases would have been different.

More fundamentally, section 523(a)(16) governs the discharge of personal liability, not liens.  There is no question that the debtor's discharge here included his *personal* liability for any pre-petition fees and assessments owed to Norhardt.  But his discharge had no effect on the validity of Norhardt's statutory condominium lien, or Norhardt's ability to enforce the foreclosure judgment it obtained by foreclosing the lien against the debtor's condominium unit.

As a final point, the debtor adds an argument about Wisconsin Statute § 806.19(4).  This state statute concerns the satisfaction of judgment liens after a bankruptcy discharge.  Like 11 U.S.C. § 522(f), this statutory provision was not referenced in the debtor's complaint (and could not have been, because at the time he filed it, the debtor had not received his discharge).  Whether the debtor is entitled to a satisfaction of a judgment under Wis. Stat. § 806.19(4) is a question that can and should be decided by the state court.  The only issue before this Court is whether the debtor may "avoid" Norhardt's condominium lien under 11 U.S.C. § 506(d).  And based on the undisputed material facts before the Court, he cannot.  Norhardt continues to hold a valid statutory lien, as defined by the Bankruptcy Code.  This lien arose by virtue of Wis. Stat. §§ 703.165(3) and (7)—not by virtue of the docketing of a judgment under Wis. Stat. §§ 806.10 and 806.15.[7]  In sum, Wis. Stat. § 806.19(4) cannot save the debtor's complaint under these facts.

---

[7] *Compare Huntington v. Meyer*, 92 Wis. 557, 66 N.W. 500, 502 (1896) (former version of Wis. Stat. § 806.15(1) was not applicable to a judgment of foreclosure, because the lien existed before the judgment: "a judgment of foreclosure and sale does not create a lien, but merely enforces a lien previously created by the mortgage itself; and hence the statute cited has no reference to such a judgment, except as to any deficiency.")

## CONCLUSION

For the foregoing reasons, the Court concludes that there are no genuine disputes as to any material facts and that Norhardt is entitled to judgment as a matter of law.

An order will be entered consistent with this decision.

The Court will consider Norhardt's motion for sanctions under Rule 9011 in a separate decision.

Dated: June 28, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge