UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    David A Doss,                                            Case No. 17-21492-beh

                  Debtor.                          Chapter 7

David A Doss,

                  Plaintiff,

v.                                             Adversary No. 18-2091

Norhardt Crossing
Condominium Association,

                  Defendant.

**DECISION ON DEFENDANT NORHARDT CROSSING CONDOMINIUM ASSOCIATION INC.'S MOTION FOR SANCTIONS**

       The Chapter 7 debtor, David Doss, filed an adversary proceeding against Norhardt Crossing Condominium Association Inc., requesting injunctive relief and seeking to avoid Norhardt's statutory lien under 11 U.S.C. sections 506(a) and 506(d). Norhardt moved to dismiss the complaint, and also moved for sanctions under Federal Rule of Bankruptcy Procedure 9011, arguing that the complaint was frivolous and unsupported by existing law.

       The Court dismissed the debtor's complaint on June 29, 2018. For the reasons stated below, it now grants Norhardt's motion for sanctions.

## JURISDICTION

       This Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. § 157(a). A motion for sanctions under Bankruptcy Rule 9011 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). *See Baermann v. Ryan (In re Ryan)*, 411 B.R. 609, 613 (Bankr. N.D. Ill. 2009).

## BACKGROUND

The debtor filed this adversary proceeding on April 13, 2018, asserting two causes of action: a claim for injunctive relief against Norhardt, and a claim asserting that Norhardt's (statutory) lien against the debtor's condominium unit was void under 11 U.S.C. § 506(d). In support of the second cause of action, the debtor alleged that Norhardt held (only) a judicial lien on the debtor's property that was junior to a first mortgage on the property, and that because the balance of the first mortgage exceeded the value of the property, there was no equity to which Norhardt's lien could attach. As a result, the debtor argued, pursuant to 11 U.S.C. §§ 506(a)(1) and 506(d), Norhardt's claim "[wa]s not 'an allowed secured claim' under the Bankruptcy Code," and Norhardt's "judicial lien [wa]s therefore void because the Defendant does not have an allowed secured claim and is discharged in accordance with the discharge statute."

Prior to commencing this adversary proceeding, the debtor had indicated that he intended to file an action to avoid Norhardt's lien based solely on its purportedly unsecured status. Because the Court saw no legal basis for the debtor to do so, it issued an order cautioning the debtor that Supreme Court precedent precludes a Chapter 7 debtor from avoiding or "stripping off" a valueless lien, citing *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992), and *Bank of America v. Caulkett*, 135 S.Ct. 1995, 1999 (2015). The debtor responded to the Court's concerns by filing his complaint, in which he asserted, without any legal authority, that Norhardt held only a judicial lien (rather than a statutory lien under Wis. Stat. § 703.165(3)),[1] and that *Dewsnup* and *Caulkett* were inapplicable because they involved junior mortgages, rather than judicial liens.

---

[1] As the Court concluded in its decision dismissing the complaint (CM-ECF Doc. No. 18), Norhardt held a valid *statutory* lien against the debtor's condominium unit, by virtue of Wis. Stat. § 703.165(3). Throughout this proceeding, the debtor incorrectly asserted that Norhardt held only a judicial lien on the property, ignoring the existence of the unsatisfied condominium lien that Norhardt filed with the Waukesha County Clerk of Courts in September 2015, which ultimately resulted in an order of foreclosure and a money judgment. The debtor's argument appeared to be that the statutory lien either vanished, or was transformed into a judicial lien, when Norhardt obtained its order of foreclosure and judgment on the lien.

On April 25, counsel for Norhardt served a draft copy of its motion for sanctions on counsel for the debtor. The motion asserted that the debtor's argument for avoidance of Norhardt's lien—a *statutory* condominium lien—under 11 U.S.C. § 506(d) was neither well-grounded in fact nor warranted by existing law or a good faith argument for the modification of existing law. The debtor did not withdraw his complaint in response to the draft motion; instead, his attorney continued arguing the merits of the complaint at both the May 31 pretrial conference in the case, and in opposing Norhardt's request for dismissal in a June 14 brief. The Court ultimately dismissed the complaint, concluding that (1) Norhardt held a valid statutory lien that was not transformed into a judicial lien by virtue of a foreclosure judgment; and (2) whether the lien was judicial or statutory, section 506(d) did not provide a basis to avoid it. The Court then requested that counsel for the debtor file a brief in response to Norhardt's motion for sanctions, and allowed Norhardt the opportunity to file a reply.

In her response brief, the debtor's counsel argues that sanctions are not warranted because she believed that "an extension or modification of the cases cited by Norhardt and this Court was the basis for the challenge to [Norhardt's] actions." CM-ECF Doc. No. 26, at 2. She also asserts that she did not file the complaint with an intent to harm or harass the opposing party, or for an improper purpose, and requests that the Court consider the motives and actions of *all* the parties to the case. She notes that she has "always believed that the bankruptcy court allowed the presentation of an equitable perspective for Debtors," and juxtaposes the size and nature of her law practice with that of counsel for Norhardt.

In its reply brief, Norhardt points out that the plaintiff never argued for the extension, modification, or reversal of existing law or the establishment of new law, and asserts that neither an honest intent nor an inability to conduct extensive research justify a Rule 9011 violation. The affidavit of fees and costs and supporting billing statement attached to Norhardt's reply brief reflect fees of $14,291 and costs of $88.69 incurred in relation to this proceeding.

# DISCUSSION

## A. Safe Harbor under Rule 9011(c)(1)(A)

Norhardt has moved for sanctions under Federal Rule of Bankruptcy Procedure 9011. Bankruptcy Rule 9011 is modeled after Federal Rule of Civil Procedure 11 and is "essentially identical" to it. *In re Ryan*, 411 B.R. at 613 ("courts look frequently to cases that interpret Rule 11 when construing Bankruptcy Rule 9011"). Like Rule 11, Bankruptcy Rule 9011 includes a "safe harbor" provision, which provides that a motion for sanctions cannot be filed with the court until at least 21 days after the motion has been served on the opposing party. *See* Fed. R. Bankr. P. 9011(c)(1)(A); Fed. R. Civ. P. 11(c)(2). The purpose of this 21–day window is to "give[] the offending party a 'safe harbor' within which to withdraw or correct the offending pleading" and avoid the imposition of sanctions. *Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011). Before turning to the merits of Norhardt's sanctions motion, the Court first must address its compliance with this safe harbor requirement.

Norhardt filed its motion for sanctions with the Court at 5:37 p.m. on May 16, 2018—just a few hours short of providing the full 21-day "safe harbor" period required by Bankruptcy Rule 9011(c)(1)(A). In the circumstances, however, this technical violation of the rule does not prevent the Court from reaching the merits of the motion. In the Seventh Circuit, strict compliance with the safe harbor provision is not required. *See, e.g. United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015) (only "substantial compliance" is required); *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) (suggesting that strict compliance with Rule 11's safe harbor provision may be excused where there was substantial compliance, where it was impossible to comply, or where the party against whom sanctions are sought waived compliance). Courts in this circuit and others have concluded that a party can waive or forfeit the right to invoke the "safe harbor" protections in certain circumstances. *See, e.g., Troost v. Kitchin (In re Kitchin),* 327 B.R. 337, 361–62 (Bankr. N.D. Ill. 2005) (plaintiff's failure to raise the "safe harbor"

defense at any of the hearings or status conferences on the defendant-debtor's sanctions motion, and first asserting the issue in a reply brief months later, resulted in waiver or forfeiture of the plaintiff's rights to attack the debtor's compliance with the provision); *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 306–07 (E.D. Va. 2004) (plaintiffs whose claims were dismissed at a hearing five hours before the expiration of the safe harbor period waived the benefit of the full 21-days, when their actions indicated they had no intention to avail themselves of its protections, including appearing by counsel at a hearing on the 21st day to argue vigorously in opposition to dismissal); *In re Evergreen Sec., Ltd.*, 381 B.R. 407, 414 and n.8 (Bankr. M.D. Fla. 2007) (debtor's failure to comply strictly with the Rule 9011 "safe harbor" provision by filing its motion for sanctions on the 21st day after serving it—due to a failure to count a federal holiday—did not defeat the motion because the opposing parties waived the safe harbor provision through their failure to withdraw and their continued litigation of their claims).

In this case, counsel for the plaintiff never raised Norhardt's compliance with the safe harbor provision—indeed, the Court considers it now only *sua sponte*—and counsel continued to argue in favor of the plaintiff's adversary claims well after the 21-day period expired, both during a hearing and in briefing. The Court finds that counsel for the plaintiff never intended to avail herself of the protection afforded by the safe-harbor window; she did not withdraw her complaint during the remaining few hours of May 16 after Norhardt filed its motion for sanctions, or at any point thereafter. Counsel was not prejudiced by the loss of a few hours of the twenty-one day period, and knowingly waived its benefit. As a result, Norhardt's lack of technical compliance with the safe harbor provision by filing its motion for sanctions on the 21st day after service does not deprive this Court of the ability to consider the merits of the motion.

### B.     Frivolousness under Rule 9011(b)(2)

Bankruptcy Rule 9011—like Rule 11—imposes a duty on counsel to conduct a reasonable investigation into both the law and the facts before

presenting a particular position to the court. By submitting a document to the court, an attorney is certifying that to the best of her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the legal contentions in the document "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr. P. 9011(b)(2). An attorney who submits an argument that is legally unreasonable or frivolous—that is, one that is "baseless and made without a reasonable and competent inquiry," *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir. 1998) (internal quotation marks omitted)—may be subject to sanctions under Rule 9011(c).

The test here is an objective one: Was the attorney's pre-filing legal investigation objectively reasonable under the circumstances? *See, e.g.*, *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993) (the court must use an objective standard in determining whether a party's prefiling inquiry was reasonable, meaning the attorney conducted a "reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law"); *Fred A. Smith Lumber Company v. Edidin,* 845 F.2d 750, 752 (7th Cir. 1988) (standard for imposing sanctions under Rule 11 is an objective determination of whether the sanctioned party's conduct was reasonable under the circumstances). The Seventh Circuit has repeatedly cautioned that an attorney's subjective belief that an argument is valid is insufficient to stave off sanctions for an objectively unreasonable position:

> [A] paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make "reasonable inquiry" beforehand. . . . "An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating." . . . Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation.

*Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (quoting *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.1986)); *Thornton*, 787 F.2d at 1154 ("Counsel who puts the burden of study and illumination on the

defendants or the court must expect to pay attorneys' fees under the Rule. . . . [E]very lawyer must do the necessary work to find the law *before* filing the brief. It is not acceptable to make an assertion of law and hope that it will turn out to be true.") (internal citations omitted).

In considering whether Rule 9011(b)(2) was violated, the Court examines *not* whether a claim itself was frivolous or nonfrivolous, but whether counsel adequately researched the law before filing the claim. *In re Excello Press, Inc.*, 967 F.2d 1109, 1112 (7th Cir. 1992) ("The bankruptcy court asked precisely the right question—not whether the claim itself was frivolous or nonfrivolous, but whether [the filing party] conducted an adequate inquiry into the facts and the law before he filed the claim."). For this reason, "sanctions do not inevitably flow from being wrong on the law." *Harlyn*, 9 F.3d at 1270. The focus of Rule 11 "is ex ante (what should have been done before filing) rather than ex post (how things turned out)"—in other words, "Rule 11 focuses on inputs rather than outputs, conduct rather than result." *Mars Steel Corp.*, 880 F.2d at 932. How much investigation is reasonable will depend on the circumstances of the particular case and often is a question of line-drawing. *Id.* at 933. "Sanctuary as a result of reasonable investigation ensures that counsel may take novel, innovative positions—that Rule 11 does not jeopardize aggressive advocacy or legal evolution." *Id.* at 932. The purpose of Rule 9011 "is to lend incentive for litigants 'to stop, think and investigate more carefully before serving and filing papers,'" *Berwick Grain Co. v. Illinois Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000), and to ensure that the "powerful, intimidating, and often expensive" machinery of the federal judiciary is "engaged only to address claims and defenses that have a reasonable basis in fact and law." *N. Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883–84 (7th Cir. 2017).

In this case, Norhardt claims that the debtor's counsel violated Rule 9011(b)(2) by filing a frivolous complaint that was unwarranted by existing law or a good faith argument for the modification of existing law. To determine whether sanctions are appropriate, the Court must consider whether the

debtor's counsel made an inquiry, reasonable under the circumstances, into the applicable law before filing the debtor's complaint. Put another way, should it have been obvious to counsel after a reasonable investigation of the relevant authorities that the debtor's "avoidance" argument had no chance of success? *See Maxwell v. KPMG LLP,* 520 F.3d 713, 719 (7th Cir. 2008) (an argument is "frivolous" if the probability of the suit's succeeding is very low).

The Court concludes that any reasonable pre-filing inquiry would have revealed the futility of the debtor's cause of action, and that the filing the complaint in the circumstances violated Rule 9011(b)(2). While neither the Supreme Court nor the Seventh Circuit have ruled on the propriety of a Chapter 7 debtor using §§ 506(a)(1) and 506(d) to avoid an "unsecured" judicial or statutory lien, the debtor's counsel should have been almost certain from the existing case law cited in the Court's June 28 memorandum decision (CM-ECF Doc. No. 18) that this Court would read *Dewsnup* and *Caulkett* to apply to nonconsensual liens—including judicial and statutory liens. Counsel knew before filing the complaint that the Court viewed *Dewsnup* and *Caulkett* to preclude the relief the debtor was seeking. Realizing that relief would be predicated on convincing the Court that *Dewsnup* and *Caulkett* did not apply in this case, a reasonable legal inquiry would have involved researching how other courts have applies those cases in situations similar to the debtor's.

It is clear that such an investigation was not conducted. The debtor attempted to distinguish *Dewsnup* and *Caulkett* by (1) asserting without any legal support that Norhardt held only a judicial lien; (2) citing a Wisconsin Supreme Court case and stating that, "[u]nder Wisconsin law a judicial lien is not a mortgage and doesn't create an interest in property"; and (3) concluding that "Debtor's case is factually different and distinguishes the lien from the mortgage application of the holdings in *Dewsnup v[.] Timm,* 502 U.S. 410, 417 (1992) and *Bank of America v. Caulkett,* 135 S.Ct. 1995, 1999 (2015)."

Counsel's attempt to distinguish *Dewsnup* and *Caulkett* on factual grounds is not sanctionable on its own—it is her failure to conduct an adequate legal inquiry before making the argument that violates Rule 9011.

Counsel provided no legal authority (or even a well-researched policy argument) to explain why such a factual distinction—judicial lien versus mortgage—matters. *Compare Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002) (affirming denial of Rule 11 sanctions even though appellants' claims were "barred by existing Supreme Court and Seventh Circuit case law" and deferring to the district court's conclusion that the complaint was not so frivolous as to warrant sanctions, because the appellants considered and made conscientious attempts to distinguish their case from the governing case law); *see also Thornton*, 787 F.2d at 1154 ("[T]his appeal rests on a serious misstatement of state law. It is hard to imagine . . . that a lawyer could inform us—without a shred of authority—that in Illinois an application for a stay has the effect of a stay itself. We do not want to discourage vigorous advocacy, but an advocate must represent his client within the existing structure of the law, and not some imagined version of it."). A reasonable pre-filing inquiry would have revealed that most courts have rejected the debtor's argument.[2] *See, e.g., Concannon v. Imperial Capital Bank (In re Concannon)*, 338 B.R. 90, 95–96 (B.A.P. 9th Cir. 2006) (extending *Dewsnup* to judicial liens); *see also Ryan v. United States (In re Ryan)*, 725 F.3d 623 (7th Cir. 2013) (extending *Dewsnup* to Chapter 13 cases; in particular, a case involving the attempted avoidance of a statutory tax lien and not a mortgage).

Counsel's failure to press the section 506(d) argument in briefing is telling. The Seventh Circuit has observed that while "[t]he complaint need not

---

[2] As the Court noted in its June 28 decision, there is a clear majority approach to this question, and the Court was able to locate only one (unpersuasive) case constituting its own minority camp. *See* CM-ECF Doc. No. 18, at 11–12 n.5. The result here may have been different if counsel had identified these varying approaches and made a non-frivolous argument that this Court should side with the lone minority court. *Compare Excello Press*, 967 F.2d at 1115 (concluding that the district court abused its discretion in imposing Rule 9011 sanctions against counsel for relying on the then-minority approach when there was a split of authority and neither the Seventh Circuit nor the bankruptcy judges for that district had addressed the question, explaining that counsel "should have been able to argue, without fear of sanctions, that [the bankruptcy judge] should adopt the minority approach"). Counsel did not make such an argument here, and the Court examines only whether the arguments counsel actually made were reasonable, not whether reasonable arguments *could have been* made. *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 225 (7th Cir. 1990).

and should not contain citations or legal argument," an attorney's later arguments are indicative of whether the complaint was a genuine attempt to extend or modify existing law, or establish new law:

> To find out whether it was the opening shot in a campaign for some new legal principle, a court must examine what the lawyers later say about their work. . . . The only way to find out whether a complaint is an effort to change the law is to examine with care the arguments counsel later adduce.

*Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987). Here, those later arguments are non-existent. After making the unsupported assertion in the complaint that *Dewsnup* does not apply to judicial liens, counsel did not even attempt to defend that legal position in her brief in opposition to dismissal. Instead, she discarded the section 506(d) argument altogether and appealed to the Court to apply another—and equally inapplicable—provision of the Code, section 522(f)(1).[3]

    The debtor's counsel now claims that, at the time she filed the complaint, she believed there was a basis for the modification or extension of existing law—specifically, the law "cited by Norhardt and this Court," which means the Supreme Court cases of *Dewsnup* and *Caulkett*. But her brief in opposition to dismissal does not mention either of those cases, let alone argue for their extension or modification. At a minimum, the Court would expect *some* discussion of *Dewsnup* and *Caulkett* and the legal authority counsel discovered during her pre-filing inquiry that would support a reasonable argument for the

---

[3] Counsel argued (bold in original):

> Judicial liens can be avoided in chapter 7 bankruptcy when they impair Debtor's homestead exemption. [In] **In re Schmiedel 236 B.R. 393 (Bankr. E.D. WI July 1999)** . . . [t]he court recognized and noted "Although the motion did not specifically mention 11 U.S.C. § 522(f)(1) the debtor's motion made clear that she wished to remove the Joliff's lien from her property." . . .
>
> Debtor's complaint raised issues under 11 U.S.C. §506(d) and §523 seeking to avoid the judicial lien held by Norhardt Crossing Condominium Association. This court has the discretion to grant the same relief ordered in **Schmiedel** by Judge McGarity based on the allegations and facts in the complaint filed with the court.

CM-ECF Doc. No. 15, at 3–4. As the Court previously concluded, Norhardt has a valid statutory lien, and therefore section 522(f)(1) cannot be used to avoid it.

extension or modification of their holdings.  The only conclusion the Court can draw in these circumstances is that counsel either did not research her legal positions before filing the debtor's complaint or, having done so, proceeded to press an objectively futile argument.  *See, e.g., In re Witt*, 481 B.R. 468, 473 (Bankr. N.D. Ind. 2012) (counsel cannot argue that the governing legal standard is incomplete or inadequate without first acknowledging the standard; if counsel does not do so, "then it is appropriate to conclude that counsel are not engaged in trying to change the law; counsel either are trying to buffalo the court or have not done their homework.  Either way Rule 11 requires the court to impose a sanction") (quoting *Szabo,* 823 F.2d at 1082).

Counsel's lack of access to "unlimited legal resources" (*see* CM-ECF Doc. No. 26, at 3) does not excuse a failure to conduct adequate research, particularly when the Court issued an order providing the governing legal authority six days before the complaint was filed.  Counsel had essentially equal access to the pertinent case law, which the Court cited in its June 28 decision.

While not dispositive of the Court's decision to dismiss the claim under section 506(d), the debtor's arguments that Norhardt had only a judicial, and not a statutory, lien provide further circumstantial evidence of counsel's failure to conduct a reasonable pre-filing inquiry.  At the May 31 pretrial conference in this matter, the debtor's counsel either consciously ignored or failed to recognize the difference between a statutory lien and a judicial lien; using the terms interchangeably, she apparently conflated Norhardt's money judgment with its order for foreclosure and foreclosure judgment.  While agreeing at the May 31 hearing that Norhardt's *statutory* lien still existed, she switched course in her brief in opposing dismissal, and argued that Norhardt's statutory lien had been transformed into a judicial lien through foreclosure.  This new argument was not supported by any legal authority and has been rejected expressly by courts within this circuit.  What's more, neither the complaint nor the opposition brief cited, let alone addressed, the governing Wisconsin statutes that gave rise to the condominium lien and foreclosure action, Wis.

Stat. §§ 703.165(3) and (7). Counsel should have known that her transformation theory was an untenable argument.[4]

The Court does not consider a motion for Rule 9011 sanctions lightly and "is well aware of its responsibility to carefully avoid penalizing arguments for legal evolution." *In re Collins*, 250 B.R. 645, 666–67 (Bankr. N.D. Ill. 2000). Had the debtor's counsel offered any meaningful legal discussion or analysis of section 506(d), or provided any citation to authority in attempting to distinguish *Dewsnup* and *Caulkett* on factual grounds, "it might have been possible to conclude that [s]he was making a good faith argument for change in or extension of the law. However, [s]he did none of these things, but left the Court and [Norhardt] to do all that research. Such foisting of the burden onto the Court or one's opponent is precisely what Rules 11 and 9011 were created to prevent." *Id.* at 666–67.

The debtor's counsel is correct in suggesting that bankruptcy courts allow attorneys to "argue for modification of existing law in order to advance equitable principles and fairness" (CM-ECF Doc. No. 26, at 3), but such arguments must recognize the limits of a bankruptcy court's discretion. A court cannot ignore binding precedent (or the language of the Code) to reach what it sees as an equitable or preferable result. "The fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be." *In re Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986). This Court is without the power to modify the Supreme Court's holdings in *Dewsnup* or *Caulkett*, or to fashion a remedy inconsistent with the law they establish.

---

[4] The debtor's opposition brief also contained a confusing argument about 11 U.S.C. section 523(a)(16), which cited old and inapplicable authority, and seemed to suggest the debtor believed Norhardt's *post*-petition condominium fees were included in the debtor's discharge, in direct conflict with section 523(a)(16). CM-ECF Doc. No. 15, at 4–6.

Because, in the circumstances, counsel failed to make a reasonable pre-filing inquiry into the relevant legal authority supporting the debtor's section 506(d) lien-avoidance claim, sanctions are warranted under Rule 9011(b)(2).[5]

**C. Sanctions**

The only remaining question is the appropriate sanction. A sanction for a violation of Rule 9011 must "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," and may include "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation," if "warranted for effective deterrence." Fed. R. Bankr. P. 9011(c)(2). A court enjoys broad discretion in determining the appropriate sanction to impose for a Rule 9011 violation. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003); *Fries v. Helsper*, 146 F.3d 452, 459 (7th Cir. 1998) (noting that courts have "significant

---

[5] Counsel, in her complaint on behalf of the debtor, implied another argument for relief. Paragraph 23 of the complaint asserts, "The sheriff sale will not generate enough money to pay the Wells Fargo mortgage and the tax liens owned [*sic*] to the IRS and WDOR so Debtor can only reason that the motivation for the sale is to force the Debtor from his home based on some personal animus toward him." CM-ECF Doc. No. 1, at 3–4. The accompanying affidavit of Mr. Doss states at paragraph 5: "Norhardt . . . is attempting to enforce the foreclosure judgment to take my home because to the best of my knowledge, I am the only black tenant in the whole complex and the owners no longer want me to live in my home." *Id.* At 6. Similarly, counsel's response brief argues, "The motivation of Norhardt has to be questioned. It is not about their right to collect the assessment from the Debtor it is more, some nefarious motive to remove the only black man from the complex. . . . Their motive has to be something other than the fees to get the Debtor's homestead. It must be something more vicious and sinister."

Those are the only references to a potential discriminatory basis for the creditor's action in the underlying foreclosure matter. Importantly, this inflammatory supposition is not the basis for this Court finding that the debtor's complaint is frivolous. But it is ample cause to caution counsel. Only well-supported, relevant arguments have a place in a legal pleading or brief. *See, e.g.*, Fed. R. Civ. P. 12(f) (court may strike from pleadings any "immaterial, impertinent, or scandalous matter"); *Pigford v. Veneman*, 215 F.R.D. 2, 4–5 (D.D.C. 2003) (striking filings that accused opposing counsel of exhibiting a "racist attitude" without support in facts or evidence, as "scandalous" under Rule 12(f))); *Mallory v. City of Riverside*, 35 F. Supp. 3d 910, 941 (S.D. Ohio 2014) ("Plaintiff's counsel is close to the line of what constitutes 'zealous advocacy.' Precisely because allegations of racist behavior are so serious if true, trumped-up allegations of racism, unsupported by evidence, are particularly invidious. Counsel is cautioned that such conduct in the future will be sanctioned."). A lawyer's role as advocate and counselor is not only to listen to a client's perspective, but to distill fact from emotion and advise the client of applicable legal standards and why compliance with those standards is necessary before bringing claims.

discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person(s)"); *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1066 (7th Cir. 1987) (When determining an appropriate sanction under Rule 11, "[t]he court may impose a penalty as light as a censure and as heavy as is justified.").

Because Rule 9011 is not a fee-shifting statute and the primary purpose of sanctions is the deterrence of baseless filings, prevailing parties "are not automatically entitled to receive full reimbursement of their expenses just because the case was frivolous. A Rule 11 sanction is *not* meant to reimburse opposing parties for their costs of defense." *Anderson v. Cty. of Montgomery*, 111 F.3d 494, 502 (7th Cir. 1997), *overruled on other grounds by DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *see also Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994) ("[T]he Rule calls only for an appropriate sanction—attorney's fees are not mandated. While an award of the injured party's attorney's fees may well be the norm, and satisfies the compensatory purpose of Rule 11 to ensure that the proponent of a position incurs the costs of investigating the facts and the law, it is also true that the deterrent purpose of the rule should be served by impos[ing] a sanction that fits the inappropriate conduct.") (internal quotation marks and citations omitted).

In fashioning an appropriate sanction, a court "should reflect upon equitable considerations." *Brown v. Fed'n of State Med. Boards of the U.S.*, 830 F.2d 1429, 1439 (7th Cir. 1987), *abrogated in part on other grounds by Mars Steel Corp.*, 880 F.2d at 930. "These include (but are not limited to) whether the misconduct was part of a pattern, whether the attorney has engaged in similar conduct in other litigation, what effect the misconduct had on the litigation process, whether the attorney is experienced in the area of law, and whether the conduct was willful or negligent." *In re Brent*, 458 B.R. 444, 462 (Bankr. N.D. Ill. 2011); *see also Witt*, 481 B.R. at 478–79 ("In fashioning an appropriate sanction, the court may consider such things as the nature of the misconduct, whether it was intentional or inadvertent, the degree of culpability,

if it represents a pattern of activity in this or other litigation, its effect on the litigation, and, if appropriate, the resources of the individual or party being sanctioned.").

While Norhardt seeks its full $14,379.69 in attorney fees and costs as the appropriate sanction, Mr. Doss's counsel urges against the imposition of any sanction. The Court will take a somewhat middle road and award a portion of Norhardt's reasonable attorney fees and costs as the appropriate sanction. Rule 11 requires the least severe sanction adequate to serve as an effective deterrent. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710–11 (7th Cir. 2001). Courts may use their discretion to award, for example, a percentage of the prevailing party's fees as a sanction. *See, e.g., Johnson*, 18 F.3d at 1367 (recognizing court had discretion to award 20% of fees, but remanding for further consideration, based on factors in addition to relative law firm size). Where courts award a smaller portion of the fees requested as a sanction, compensation to the prevailing party is not the primary force behind such sanction; instead, deterrence is the main purpose. *Brown*, 830 F.2d at 1439.

Given the nature of the plaintiff's counsel's conduct, particularly in pursuing a meritless complaint after being cautioned by the Court that Supreme Court case law (*Dewsnup* and *Caulkett*) most likely precluded the relief sought, and more importantly, by the inability to make sustainable good faith arguments for extension of that law at both the May 31 hearing and in the summary judgment brief (two junctures where counsel adopted differing legal arguments), a non-monetary sanction would be insufficient to redress the harm caused or to deter Mr. Doss's counsel and others from pursuing such unfounded courses in the future. *See e.g., Chwarzynsk, v. Tebens*, No. 07C2102, 2008 WL 4210661, at *1 (N.D. Ill. Sept. 10, 2008) (declining to impose only a non-monetary sanction but finding payment of all opposing parties' fees and expenses would be excessive). Other factors the Court has considered are the fact that this is a discrete instance, and not a pattern of unwarranted filings. *See Brent,* 458 B.R. at 462 (court should reflect upon

equitable considerations, including whether misconduct was part of a pattern, counsel's level of experience, and whether the conduct was willful or negligent). In this case, counsel has several decades of legal experience. The fact that the debtor's legal argument changed several times, but never with valid support, suggests a negligent misapprehension of the law, not willful misconduct.

The debtor's counsel asks the Court to consider the relative size of her firm (one lawyer) versus the larger firm retained by Norhardt. This is a magnitude-of-sanction argument, which other courts recognize. *See, e.g. Johnson,* 18 F.3d at 1366-67 ("one can easily envisage a situation in which a sanction of $50,000 would devastate a sole practitioner but would be only petty cash of minimal deterrent effect . . . to a giant law firm.").

As already implied in footnote 5, supra, counsel may have pressed forward with her legally unsupported complaint because of client pressure. Her response to the sanctions request suggests as much:

> I do not agree that sanctions are "clearly warranted" because . . . [d]ebtor requested assistance even if the chances of success were minimal because of the time and investment he had placed in the real estate over the past 15 years. . . . [C]ounsel explained to the Debtor that yes they have the right to enforce their judgment, yet the logic behind the condo association's actions escaped him. This was the Debtor's home and he wanted to continue to live there.

CM-ECF Doc. No. 26, at 1–2. It is counsel's duty to assess whether a "minimal chance of success" has any good faith basis in the law.[6] If it does not, counsel should advise the client accordingly, and not participate in using opposing counsel's and the Court's resources to wage a fruitless fight. *See, e.g.,* Wis. SCR 20:2.1 cmt. 1 ("Legal advice often involves unpleasant facts and alternatives that a client may be disinclined to confront. . . . [A] lawyer should not be deterred from giving candid advice by the prospect that the advice will

---

[6] *Compare Maxwell v. KPMG LLP*, 520 F.3d 713, 718–19 (7th Cir. 2008) ("A frivolous appeal has *some* chance of success: lightning may strike, or the law may change while the appeal is pending . . . . But frivolous suits are forbidden. So frivolousness must depend not on the net expected value of a suit in relation to the cost of suing, but on the probability of the suit's succeeding. If that probability is very low, the suit is frivolous; really that is all that most courts, including ours, mean by the word.").

be unpalatable to the client."); *In re Williams*, 378 B.R. 811, 827–28 (Bankr. E.D. Mich. 2007) ("Just because a client wants to embark on a course of action does not mean that the lawyer is obligated to assist the client in pursuing that course of action if it is inconsistent with the exercise of independent professional judgment by the lawyer. . . . [S]ometimes sympathy must be tempered by a hard dose of reality.").

Considering all the factors, the Court finds that a monetary sanction is warranted, but one less than the full payment of Norhardt's reasonable attorney fees and costs will suffice to deter the debtor's counsel (and others) from future frivolous filings, particularly as this appears to be a discrete instance in a long career. The Court concludes that one-quarter of Norhardt's reasonable fees and expenses is an appropriate sanction.

The next question is how much Norhardt reasonably spent on this case. Turning first to Norhardt's claimed expenses of $88.68, this cost represents mileage for Norhardt's attorney to travel to and from her Madison, Wisconsin, office to the May 31 hearing in Milwaukee. The amount translates to a round-trip travel distance of 162.7 miles (calculated at the IRS standard mileage rate of $.545), which is consistent with the distance between the two cities and therefore reasonable.

As for Norhardt's claimed attorney fees, courts generally calculate reasonable attorney fees by using the lodestar method. This method requires courts to multiply the hours reasonably spent on the litigation by a reasonable hourly rate. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Norhardt seeks $14,291 for the 43.2 hours it asserts its attorneys spent responding to Mr. Doss's complaint and on the motion for summary judgment and sanctions motion.

A reasonable hourly rate is derived from the market rate for services rendered, and presumes that a lawyer's actual billing rate for this type of litigation fits the market rate. *Pickett*, 664 F.3d at 640. As evidence of reasonableness, Norhardt has submitted an affidavit from its primary lawyer in

this matter, averring to the fees and costs incurred by Norhardt in this proceeding. The attached billing statement reflects that the normal rates her firm charges range between $200 and $495 per hour, and indicates that Norhardt has paid the firm at these rates. CM-ECF Doc. Nos. 27-1 and 27-2. Based on the evidence provided and the Court's experience in a range of cases in this district, the Court finds that the hourly rates that Norhardt's counsel charged for this litigation are reasonable.

That is not to say, however, that the full $14,291 will be used to calculate the sanction. In the Seventh Circuit, courts are to "assess a sanction only in the amount of those fees reasonably incurred in responding to sanctionable filings." *Katz v. Household Int'l, Inc.*, 36 F.3d 670, 676 (7th Cir. 1994). Deductions can be made for discrete hours that appear excessive, redundant or unrelated to the litigation, or time entries that are too vague to prevent a reasonableness assessment. Fees for non-attorney work, such as clerical and administrative tasks, are not part of the calculation.

Here, the primary lawyers on behalf of Norhardt are Attorneys Vladmirova and Chartre. Attorney Vladmirova performed the bulk of the legal work, often in consultation with Attorney Chartre. Other timekeepers have more limited entries. Some entries on the time log of fees submitted do not appear directly related to responding to the adversary complaint filed by Mr. Doss. On April 25, 2018, Attorney Chartre has a .5 entry that includes not only review of the sanctions motion, but a conference with a paralegal about the sheriff's sale result. That entry has been reduced by .3. On June 26, 2018, Attorney Vladmirova entered .1 hours to "Provide bankruptcy status to Attorney Kasper per request of state court." That entry will be disregarded, as it relates to the state court action, and is not a response to Mr. Doss's complaint. The total deducted for these two unrelated entries is $162.50.

There are multiple entries regarding efforts at settlement following this Court's decision on summary judgment. Norhardt's board ultimately rejected Mr. Doss's proposal. Because Norhardt had at least as much control over the extent of any settlement discussions as did Mr. Doss, the Court does not

consider those discussions a direct response to Mr. Doss's complaint, and will disregard entries from July 2, 2018 through July 19, 2018, which total $1,341.50. *See In re Yagman*, 796 F.2d 1165, 1188 (9th Cir. 1986) (considering whether party seeking fees caused the litigation to be longer than necessary). Included within those entries are several references to the state court action, and would be disregarded as unrelated, as well.

A few entries appear to be for clerical tasks, which would not be compensable in a bankruptcy case, *see In re Nelson,* No. 16-22089-BEH, 2017 WL 449581, at *3 (Bankr. E.D. Wis. Feb. 1, 2017), and are not calculated in a fee-based sanction. *K3 Prop, LLC v. GQ Sand, LLC,* 16-CV-142-JDP, 2017 WL 5033659, at *4 (W.D. Wis. Nov. 1, 2017). Accordingly, the Court deducts .3 from the .6 entry of May 9, 2018, "Finalize objection; coordinate filing." The June 26, 2018 entry for .1, "Confer with the Court concerning the status of this case," will be disregarded, as it appears to reflect a phone call about calendaring. The September 14, 2018 entry, "Prepare affidavit and exhibits; revise reply brief; coordinate filing of same," for 2.8 hours, includes the clerical task of filing. The Court will deduct .5 from this entry. These three deductions for clerical tasks total $280.50.

Several entries are not in tenths of an hour, as required by this district's Local Rules (*see* LR 2016(a)(2)(A)), and so entries for .72 (May 8, 2018), 1.21 (May 16, 2018), and .97 hours (May 30, 2018) will be disregarded. This results in a deduction of $928. *See Nelson*, 2017 WL 449581, at *1, 5.

After deducting for unrelated or clerical or otherwise noncomforming entries, the total invoice paid by Norhardt is $11,667.19. Twenty-five percent of that amount is $2,916.80. That will be the amount of the sanction imposed by this Court.

## CONCLUSION

For the reasons set forth above, the Court will grant Norhardt's motion for sanctions under Bankruptcy Rule 9011 and order the debtor's counsel to pay Norhardt a portion of its reasonable attorneys' fees and costs, in the amount of $2,916.80.

The Court will enter a separate order consistent with this decision.


Dated: December 13, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge